```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF TEXAS
 2                        FORT WORTH DIVISION

 3   MARK DiSANTI,                  )  CAUSE NO. 4:10-CV-287-A
              Plaintiff,            (
 4                                  )
     vs.                            (
 5                                  )
     MORTGAGE ELECTRONIC            (  JULY 8, 2010
 6   REGISTRATION SYSTEMS, INC.,    )  FORT WORTH, TEXAS
              Defendant.            (  10:00 a.m.
 7   _____

 8

 9   _____

10              HEARING ON MOTION TO DISMISS
                HEARING ON RULE 11 MOTION
11

12            BEFORE THE HONORABLE JOHN McBRYDE
                 UNITED STATES DISTRICT JUDGE
13
     _____
14

15                     A P P E A R A N C E S

16        FOR THE PLAINTIFF:   LAW OFFICES OF KENNETH S. HARTER
                               1620 E. BELTLINE ROAD
17                             CARROLLTON, TEXAS  75006
                               (972) 242-8887
18                             kharter@ctc.net
                               BY:  MR. KENNETH S. HARTER
19
          FOR THE DEFENDANT:   CROUCH & RAMEY
20                             1445 ROSS AVENUE, SUITE 3600
                               DALLAS, TEXAS  75202
21                             (214) 922-7200
                               cramey@crouchfirm.com
22                             krodine@crouchfirm.com
                               BY:  MR. COLE B. RAMEY
23                                  MS. KARLY STOEHR RODINE

24        OFFICIAL REPORTER:   SHAWN M. McROBERTS, RMR, CRR
                               1100 COMMERCE STREET, RM. 1654
25                             DALLAS, TEXAS  75242
                               (214) 753-2349
```

1      THE COURT:  Okay.  We are here for a hearing on
2  No. 4:10-CV-287-A.  It is styled Mark DiSanti, it looks like,
3  versus Mortgage Electronic Registration Systems, Inc.
4      We are here for a hearing pursuant to an order the Court
5  signed on June 24th, 2010.
6      Can you go and talk to whoever we need to talk to get
7  that turned off?
8      THE COURT SECURITY OFFICER:  Yes, sir.
9      THE COURT:  Let me see who all is here.
10     Who is here for the Plaintiff?
11     MR. HARTER:  Good morning, Your Honor.  Kenneth
12  Harter here representing Mr. DiSanti.
13     THE COURT:  And this is Mr. DiSanti?
14     MR. HARTER:  This is Mr. DiSanti.
15     THE COURT:  And who is here for the Defendant?
16     MS. RODINE:  Good morning, Your Honor.  Karly Rodine
17  for Mortgage Electronic Registration Systems.
18     THE COURT:  Okay.  Let's see.  I show that Mr. Ramey
19  represented --
20     MR. RAMEY:  I am here as well, Your Honor, but she
21  is handling the hearing.
22     THE COURT:  I can't hear you when you are aware from
23  the microphone.
24     MR. RAMEY:  She is handling the hearing.  I just
25  walked in a bit late.

1          THE COURT:  Apparently you are the lead attorney.
2          MR. RAMEY:  Yes, sir.
3          THE COURT:  Well, we will let you participate, then,
4   as the lead attorney.
5          And we are going to try to get that aggravating sound
6   done away with, but in the meantime we will go ahead.
7          I had two matters scheduled for hearing today.  One was
8   the motion the Defendant had filed to dismiss; and the other,
9   I wanted to consider the possibility of Rule 11 sanctions in a
10  sense they deal with the same subject, but not exactly.
11         So we are going to start with the dealing with the motion
12  to dismiss.
13         I have read the presentations from both of the parties,
14  and I am inclined to think the motion should be granted, but I
15  want to hear from Mr. Harter on that, of course, before I make
16  a ruling.
17         Mr. Harter, the motion to dismiss is, of course, directed
18  to the pleadings.
19         MR. HARTER:  Yes, Your Honor.
20         THE COURT:  And I have gone back over the pleading
21  after reading the filing you made either yesterday or the day
22  before, and after having read them I still can't reach a
23  conclusion that there is any allegation in this complaint of
24  any justiciable controversy between the Plaintiff and
25  Defendant.

1       So can you get that complaint in front of you, and if you
2  think there is some allegation in there of a justiciable
3  controversy, would you tell me what paragraph it is in and
4  what the language is?
5               MR. HARTER:  Certainly, Your Honor.
6       In looking at beginning with paragraph 14, which is on
7  page 5 of the Plaintiff's original petition in the case that
8  was filed in state district court --
9               THE COURT:  That is the one I am looking at.
10              MR. HARTER:  Correct.  What is being alleged in
11 paragraphs 14, 15, 16, and 17, Your Honor, are that
12 Mr. DiSanti purchased a piece of real estate in a junior lien
13 foreclosure sale; that there is a cloud on the title.  Now, by
14 cloud on the title we don't mean necessarily that there is
15 some improper or illegal sort of encumbrance showing of
16 record, but that there is an encumbrance of record on the
17 title which would affect Mr. DiSanti's title, and Mr. DiSanti
18 as the purchaser of the junior lien foreclosure sale wishes to
19 be able to identify the owner and holder the note that
20 underlies the first deed of trust which encumbers his property
21 so that he can service the note.
22              THE COURT:  Hold on just a minute.
23              THE COURT SECURITY OFFICER:  We are supposed to
24 evacuate.
25              THE COURT:  That is a fire alarm.  It is telling us

1  to evacuate.  I can't imagine why, but let's evacuate.  So we
2  will be back whenever the emergency is over.
3                    (Brief recess.)
4          THE COURT:  Okay.  We are back where we left off,
5  and where we left off was that Mr. Harter was at the podium
6  telling me that I would find the description of the
7  justiciable controversy I believe in paragraph 14 of the
8  petition by which the action was instituted in state court.
9     Is that where we left off?
10         MR. HARTER:  Yes, Your Honor, 14 through 17.
11         THE COURT:  Okay.  Go ahead.  You were explaining
12 that you wanted to find out something.
13         MR. HARTER:  Yes, Your Honor.
14    Mr. DiSanti purchased the property at a Junior lien
15 foreclosure sale.  The senior league reflects that the
16 beneficiary of the deed of trust is an entity called Mortgage
17 Electronic Registration Systems, Inc., and it expressly states
18 in the deed of trust that MERS holds that a title, is the
19 beneficiary as nominee only for the, quote, lender.
20    Your Honor, what we have found in this case, and other
21 cases but in this case specifically, is MERS is in fact not
22 the lender and is not the party to whom payments are to be
23 remitted.  They are not the party who is entitled to receive
24 payments on the note.  They are named as beneficiary as a
25 convenience only.

1               THE COURT:  Okay.  You are telling me something you
2     found out, but you are not pointing to me where that is in the
3     pleading.
4               MR. HARTER:  Okay.  Your Honor, those specific facts
5     are not in the pleading.
6               THE COURT:  You don't allege a justiciable
7     controversy in the pleading.  You may have one, but you
8     haven't pleaded it.
9               MR. HARTER:  Well, if Your Honor makes that
10    conclusion -- I would respectfully disagree, but if that is
11    the conclusion of the Court, we would certainly ask for leave
12    to amend our state court petition into a federal court
13    complaint.
14         As the Court knows, this matter was pled in state court
15    under what we consider to consider to be the state court rules
16    of pleading, and up to this point we had not had an issue
17    directed to us by any of the state court judges that indicates
18    that there was an issue with justiciability.
19         If this Court finds that there is, then I would
20    respectfully ask that we be granted leave to amend to add
21    those add those additional specific facts that the Court would
22    require in order to more clearly plead a controversy which the
23    Court would find to be justiciable.
24              THE COURT:  Okay.  Tell me what that justiciable
25    controversy is again that you haven't pleaded.

1          MR. HARTER:  Well, the justiciable controversy, Your
2    Honor, is that for Mr. DiSanti to be able to maintain his
3    interest in this property, he will have to service the senior
4    lien.  He cannot service the senior lien without knowing who
5    is the holder of the note so that he knows to whom he needs to
6    pay the money which is owed to the lender.
7       He cannot find that out without bringing MERS to court
8    because there is absolutely no transparency in the public
9    record.
10         THE COURT:  Have you called and asked them?
11         MR. HARTER:  In this particular case, no, Your
12   Honor.  But as the Court will see in Mr. DiSanti's affidavit,
13   when he began investing in properties he would make those
14   inquiries to banks and he would be shut down.
15         THE COURT:  We have to deal with these case by case,
16   and if you haven't gone to the trouble to find out if the
17   Defendant will tell you what you need to know, then it is
18   premature for you to file a lawsuit and claim there is a
19   justiciable controversy.  There isn't a controversy until you
20   find that you can't get the information by you need by simply
21   asking them.
22         MR. HARTER:  Well, Except that, Your Honor, the
23   history has shown that this information is not at all
24   available to Mr. DiSanti in the absence of filing a lawsuit
25   for declaratory relief --

1          THE COURT:  Let me ask Mr. Ramey.  Will your client
2  give him the information he wants?
3          MR. RAMEY:  Absolutely, Your Honor.
4          THE COURT:  Can it do it today?
5          MR. RAMEY:  Yes, Your Honor.
6          MR. HARTER:  Your Honor, may I interject something
7  which I think will be helpful to the Court on that issue as
8  relates to this case?
9          THE COURT:  Okay.
10         MR. HARTER:  Okay.  We did have a settlement
11  conference.  The parties did meet and confer in Mr. Ramey's
12  conference with Mr. Florence and Ms. Rodine and myself and
13  Mr. DiSanti, and at that meeting a representative of Bank of
14  America was present which alleges to be the real party in
15  interest in this case.
16      During the meeting we asked counsel, who was very, very
17  helpful, and the lady from Bank of America if they would
18  produce the original note and if they would provide us an
19  accounting of what was owed under that note.  And we offered
20  that we would enter into an agreed judgment verifying the
21  validity of their lien with an accounting upon presentation of
22  that information.
23      They agreed to do that.  That was all done, Your Honor,
24  before the Court issued the show cause hearing that brings us
25  here today.

1           THE COURT:  That has been accomplished?

2           MR. HARTER:  Yes, sir, it has been accomplished.

3    And I just asked Ms. Rodine before we started this morning if

4    she has heard back from her representative of Bank of America.

5    She has not yet.  The lady from Bank of America told us, and I

6    think we met about a month ago, maybe four weeks ago, that if

7    the note were located here in north Texas she would have it in

8    about a week.  She said if the note were in their files in

9    California, it may take three weeks.  So I guess the note was

10   in their files in California.

11          THE COURT:  But it has been represented to you that

12   Bank of America is the owner and holder of the note?

13          MR. HARTER:  It has been so represented, Your Honor.

14   Yes.

15          THE COURT:  Well, then there is no dispute.

16          MR. HARTER:  Well, as soon as that has been verified

17   to us, Your Honor, then we are happy to enter into an agreed

18   judgment --

19          THE COURT:  There is not going to be an agreed

20   judgment.  I am not going to enter a declaratory judgment of

21   action with no dispute.

22          MR. HARTER:  In that case, Your Honor, our inquiries

23   will have been satisfied and there won't be any further need

24   for the litigation.

25          THE COURT:  Okay.  Then I am dismissing the lawsuit.

1   The motion to dismiss is valid.

2       You also indicated a possible desire to amend, but you

3   have now described to me that there is no dispute so there is

4   nothing you could allege in an amended complaint that would

5   allege a dispute.

6           MR. HARTER:  Except, Your Honor, if they are not

7   able to actually produce the note, then we are going to have

8   an issues as to whether or not --

9           THE COURT:  Then there will be a dispute perhaps,

10  but as of this moment there is no dispute, is the way I

11  understand it.

12      Is this a -- Let me ask -- You can sit down.  I want to

13  ask Mr. Ramey some questions.

14      Mr. Ramey, come up here a minute.

15      I hope I don't see anymore of these cases in my court.

16  What is the problem with your client -- I have gone through

17  some of these other suits they have had, and apparently they

18  have sometimes when they have a legitimate reason to say they

19  can't get information from your client because your client

20  simply wouldn't respond.

21      Exactly what is your client's role in these loans?

22          MR. RAMEY:  MERS is, as represented to this Court,

23  the nominee holder for the registration and for the

24  registration of the mortgage, Your Honor, on behalf of the

25  mortgage holder.

1          THE COURT:  That is a creature in law that I have
2  never heard of before.
3          MR. RAMEY:  I understand.
4          THE COURT:  And I don't know how it legitimately
5  exists in connection with a deed of trust transaction.
6      Is there some law in Texas that authorizes or recognizes
7  the existence of such an entity?
8          MR. RAMEY:  No, Your Honor.  Other than the general
9  law of assignments, I know of no specific law that blesses
10 this particular arrangement, and I am sure, as you know, there
11 is a lot of litigation going on about it.
12         THE COURT:  Okay.  I anticipate, unless there is
13 some way that your client can get something of record in
14 whatever loans it is involved in that takes it out of this
15 situation, we are going to continue to see this sort of
16 litigation.  Mr. DiSanti has discovered, as have a lot of
17 other lawyers discovered, a vulnerability in these
18 transactions, and we are going to see lawsuits right and left
19 until that is solved.
20     Has your client ever given some thought to joining with
21 whoever actually owns the loan and the deed of trust to
22 putting of record, a document that clarifies the situation as
23 to each of these deeds of trust?
24         MR. RAMEY:  With regard to every possible weakness
25 that is being alleged by every plaintiff in every case, I

1  don't know that, Your Honor.

2      With regard to these cases, I can tell you that we are
3  very hard at work at it.  With respect to this particular
4  case, Countrywide, who is the predecessor to Bank of America,
5  is on the security, so it is not like MERS alone is the party
6  and they don't know who the payments are to be made to.  I can
7  just speak to this particular case.

8          THE COURT:  Okay.  Well, I don't know that we can
9  solve the problems of the world, but I think your client needs
10 to give some thought to how to solve this problem on a broader
11 basis.

12         MR. RAMEY:  We are doing that, I promise, Your
13 Honor.

14         THE COURT:  Okay.  Well, I am dismissing the
15 lawsuit.  And after having read the documentation that has
16 been provided, though I have some question about the
17 legitimacy of filing this particular case, I can see that some
18 of these cases that have been filed were legitimately filed,
19 so I am going to not pursue the Rule 11 aspect of it any
20 further.

21     So I am going to order this case dismissed, and I am
22 going to order that -- I was going to say I was going to order
23 the costs taxed against the Plaintiff.  I guess the only cost
24 is the cost the Plaintiff incurred in filing the lawsuit?

25         MR. HARTER:  I don't know if there have been any

1  other costs involved, Your Honor, on the part of MERS in the
2  removal.
3        THE COURT:  I guess there is a cost in transferring
4  the case here.
5        MR. RAMEY:  Yes, Your Honor, but it is that limited
6  cost only.  We are not going to submit a bill of costs for
7  that to bother the Court.
8        THE COURT:  Okay.  Well, then I will order each
9  party to bear his or its own costs, and I will grant the
10 motion to dismiss.
11     Okay.  You all are excused.
12                    (End of hearing.)

```
 1              I HEREBY CERTIFY THAT THE FOREGOING IS A

 2         CORRECT TRANSCRIPT FROM THE RECORD OF

 3         PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

 4         I FURTHER CERTIFY THAT THE TRANSCRIPT FEES

 5         FORMAT COMPLY WITH THOSE PRESCRIBED BY THE

 6         COURT AND THE JUDICIAL CONFERENCE OF THE

 7         UNITED STATES.

 8

 9         S/Shawn McRoberts                 07/09/2010

10         _____DATE_____
           SHAWN McROBERTS, RMR, CRR
11         FEDERAL OFFICIAL COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```